770 So.2d 709 (2000)
Theodore D. DEWITT, etc., et al., Appellants,
v.
MARUHACHI CERAMICS OF AMERICA, INC., etc., et al., Appellees.
No. 5D99-2517.
District Court of Appeal of Florida, Fifth District.
October 13, 2000.
Rehearing Denied November 16, 2000.
*710 David J. Kohs and Alexander S. Douglas II of Pohl & Short, P.A., Winter Park, for Appellants.
Robert J. Stovash and Harold E. Morlan, II of Morlan & Stovash, P.A., Orlando, for Appellee Maruhachi Ceramics of America, Inc.
Lori W. Smith and Robert E. Mansbach, Jr. of Zimmerman, Shuffield, Kiser & Sutcliffe, P.A., Orlando, for Appellee Sunniland Corporation, Inc.
W. SHARP, J.
Theodore and Ronda DeWitt appeal from final judgments, rendered after a jury trial, which denied them any recovery against the defendants below, Maruhachi Ceramics of America, Inc., and Sunniland Corporation. The DeWitts argue on appeal that the verdict was against the manifest weight of the evidence, the trial court erred in admitting unqualified expert opinion testimony at trial, the trial court should have ordered a new trial based on false testimony presented by Maruhachi's witness, Yoshihiro Suzuki, and that the trial court erred in awarding attorneys' fees to the defendants below, against the DeWitts, and denying them to Halverson Construction Co., Inc., a nominal plaintiff. We affirm most of the judgments and rulings and reverse only with regard to the attorneys' fees awards against Ronda De-Witt and Halverson for both defendants, and against Theodore DeWitt in favor of Sunniland.
The dispute between the parties grew out of the construction of the DeWitts' new home, for which the DeWitts selected a blue clay ceramic tile roof, the color of the sky, which was manufactured by Maruhachi, and distributed by Sunniland Corporation. The DeWitts sought to prove breach of express warranties by both Maruhachi and Sunniland that the tile roof would be color-fast, and not fade or mildew for a span of fifty years. They presented testimony and evidence that shortly after the tiles were installed on the roof, between the summer of 1997 and January 1998, some of the tiles faded in color, giving the roof a splotchy appearance. They also presented evidence that some of the tiles had significant "crazing" (hairline, weblike splits in the ceramic coating).
However, there was evidence presented to the contrary. Anderson, the special products representative for Sunniland, testified the tiles were never a uniform dark *711 blue color, but were a range of blues, when they arrived at the construction site, and when installed. He said some might have changed in color but that they did not go from dark to light. Prior to their selection of the roof tiles, he also had showed the DeWitts the Maruhachi brochure with photographs of various roofs, all of which had tiles with varying shades, and he said he explained to them the tiles would be in a range of blue colors.
Suzuki, the general manager for Maruhachi, testified the S Blue C-01 tiles selected by the DeWitts were intended to simulate the color of the sky or sea, and be a range of blues, not one dark color. In order to achieve a uniform effect, it was vital that the roofer blend the tiles from the various pallets. He opined that the problem with the roof on the DeWitts' house was that the tiles had not been properly blended. Two roofers who testified for the defendants also testified the tile colors were supposed to be of varied shades of blue, and that if not properly mixed, the roof could have the appearance of light spots. Stark, an expert witness for the defendants, offered his photographs of the roof from April 1998 to June 1999, which indicated no change in color from that time frame, and Wallace, the roofer who installed the roof, had taken photographs in August, which were placed in evidence. They showed the tiles initially varied in color.
Whether or not crazing was a problem was also a point on which there was conflicting evidence. Suzuki testified crazing is found on every glazed clay roof tile and is inherent in the glazing process. He also said crazing is not considered to be a defect in the roofing industry. He serves on the American Supply Testing Material Committee C 1167, which drafted the current standards for clay tile specifications. The expert witness roofer, Steppi, confirmed that crazing was a common characteristic of ceramic clay roofs and that it was not considered to be a problem with roofing tiles. However, Eppler, the expert witness for the plaintiffs, claimed crazing was a defect and made the tiles unacceptable for outdoor use. He claimed it made the tiles weak and easily cut, but this particular defect was not proven. He also admitted he boiled two of the DeWitts' tiles for two days, but was unable to get them to change color.
The question for an appellate court is not whether or not the evidence was contrary to the manifest weight of the evidence presented below. Indeed that is the question addressed to the trial court on motion for a new trial.[1] Rather, the appellate court is limited to considering whether or not the trial court abused its discretion in denying a new trial. Clough v. Christopher, 711 So.2d 610 (Fla. 5th DCA 1998); Brafman v. Rybalka, 673 So.2d 525 (Fla. 3d DCA 1996); Winn-Dixie Stores, Inc. v. Robinson, 472 So.2d 722 (Fla.1985). In order for us to reach that conclusion, the evidence must be clear and obvious, and not conflicting, as in this case.
The DeWitts argue that much of Suzuki's testimony should have been disallowed because he lacked sufficient academic and scientific background, and thus was not qualified to testify as an expert. Much of his testimony was given without objection, and he was found to be qualified by the trial court. The trial court is given broad discretion to make that determination. See Pettry v. Pettry, 706 So.2d 107, 108 (Fla. 5th DCA 1998); Trustees of Central States Southeast and Southwest Areas, Pension Fund v. Indico Corp., 401 So.2d 904 (Fla. 1st DCA 1981). We think Suzuki's lengthy personal experience with Maruhachi and the ceramic tile business, from designing and overseeing the plant which produces the tile, his experience in Japan where that type of tile has been manufactured by Maruhachi for eighty years, and his knowledge and experience in the industry, together with his participation *712 in drafting standards and the like, sufficiently qualify him to testify about the subjects he addressed at trialthe color variations, lack of fading, testing of the tiles at the plant, and crazing. See Rule 1.390(a). For the same reasons, we also think Steppi was qualified to testify as a roofing expert concerning crazing and variations of color in ceramic tiles, and whether or not ceramic tiles fade.
Finally we disagree with the DeWitts that Suzuki gave false testimony, entitling them to a new trial. In his deposition he stated generally that tests had been done on the DeWitts' tiles. However, at trial he clarified that no tests were done specifically on the DeWitts' tiles, other than the daily tests done at the plant each day on the batches produced. Those test results were proffered to the DeWitts.
Following the trial in this case, the trial court awarded attorneys' fees to Maruhachi and Sunniland against the DeWitts in a series of somewhat conflicting orders, based on various offers of judgment. It also withdrew an earlier award of attorneys' fees to Halverson, the general contractor, based on its ruling prior to trial that the DeWitts were the purchasers of the tile, not Halverson. Thus, the basis on which fees had been awarded against Sunniland and in favor of Halverson (a contract for credit arrangement) was not applicable. All parties agreed that any judgment obtained on the counterclaim would be against the DeWitts and not Halverson. We find no error here as regards Halverson.
The trial court found that a valid offer of judgment had been made by Maruhachi to Theodore DeWitt on October 13, 1998, and accordingly, fees and costs against him in favor of Maruhachi should run from that date. At that time, Theodore DeWitt was the only plaintiff in the case, and there were no counterclaims filed by any party. This offer sufficiently supports the trial court's award. We reject the DeWitts' argument that Maruhachi had any burden to show the offer was made in good faith. That is an issue the party against whom the offer is made must address, and there is no evidence in this record upon which the trial court or this court could have found lack of good faith. Donohoe v. Starmed Staffing, Inc., 743 So.2d 623 (Fla. 2d DCA 1999).
The trial court also granted attorneys' fees and costs in favor of Maruhachi against all of the plaintiffs (Mr. and Mrs. DeWitt and Halverson) from January 15, 1999. This order is duplicatory as to Mr. DeWitt, and thus meaningless as to him in light of the prior order. As to Mrs. DeWitt and Halverson, the offer of judgment on which it is based lacks sufficient specificity upon which to premise a fee award. The offer was to "replace" the roof. But no dollar value was placed on the offer, nor did it specify the quality of the tile or structure of the replacement roof. Thus this offer cannot be evaluated sufficiently to comply with the rule and statutes. McFarland and Son, Inc. v. Basel, 727 So.2d 266, 270 (Fla. 5th DCA 1999); DiPaola v. Beach Terrace Assoc., Inc., 718 So.2d 1275, 1277 (Fla. 2d DCA 1998).
With regard to Sunniland, the trial court awarded it fees from all plaintiffs, from December 28, 1998, based on a joint offer made by Sunniland and Maruhachi on that date. The problem with this offer is that it was made only to Mr. DeWitt, and it failed to expressly mention or deal with a counterclaim filed by Sunniland against Halverson. It offered to resolve "any and all claims of the plaintiff." Mr. DeWitt was the assignee of Halverson Construction Co., and thus he could have been affected by the unresolved counterclaim against all of the plaintiffs. On appeal Sunniland agrees at best its award based on that offer should only be against Mr. DeWitt. But, based on the language of that offer, we think the failure to expressly mention the counterclaim made this offer also invalid as to him. Compare MGR Equipment Corp., Inc. v. Wilson Ice Enterprises, Inc., 706 So.2d 376 (Fla. 5th *713 DCA 1998), approved, 731 So.2d 1262 (Fla. 1999).
However, there are additional joint offers of judgment in the record made to all of the plaintiffs by Sunniland and Maruhachi which may provide a sufficient basis for an award of attorneys' fees against all of the plaintiffs. For example, a joint offer was made to Mr. DeWitt on March 29, 1999, which expressly released the counterclaim. That may suffice as a basis to award fees against him in favor of Sunniland. And on April 22, 1999, another joint offer was made to all plaintiffs, which included release of the counterclaim. That could provide a basis to award attorneys' fees against Mrs. DeWitt and Halverson as to both Maruhachi and Sunniland. Since Mr. and Mrs. DeWitt share a joint interest in their house and roof, and Mr. DeWitt was the assignee of Halverson Construction Co., Inc., the defendant's failure to apportion the offer to the plaintiffs would not make the offer too vague or unspecific. See Spruce Creek Dev. Co. of Ocala, Inc. v. Drew, 746 So.2d 1109 (Fla. 5th DCA 1999).
Accordingly, we affirm the judgments and the fee award against Mr. DeWitt in favor of Maruhachi based on the October 13, 1998 offer; but we reverse the balance of the attorneys' fees awards and remand for further consideration of the attorneys' fees issues in light of the other offers of judgment in the records.
AFFIRMED in part; REVERSED in part; and REMANDED.
COBB, J., and ORFINGER, M., Senior Judge, concur.
NOTES
[1] Tibbs v. State, 397 So.2d 1120 (Fla.1981).